# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
        **Plaintiff,**

  v.                                         **Case No. 08-CR-194**

**ANDRE BULLOCK**
        **Defendant.**

## DECISION AND ORDER

The government charged defendant Andre Bullock with possessing a firearm as a felon, contrary to 18 U.S.C. § 922(g)(1). Defendant moved to suppress the firearm, arguing that the police unlawfully searched and seized the gun from his car. The magistrate judge handling pre-trial proceedings in the case held a hearing, then issued a recommendation that the motion be denied. The magistrate judge found that the officers had probable cause to pull defendant over for a noise violation, lawfully arrested him for that violation and possessing an open intoxicant in the car, and then searched the car incident to arrest under New York v. Belton, 453 U.S. 454 (1981), locating a gun in the center console.

The Supreme Court subsequently decided Arizona v. Gant, 129 S. Ct. 1710 (2009), which narrowed the Belton rule. I permitted defendant to file an out-of-time objection to the magistrate judge's recommendation based on Gant, and parties have now briefed the applicability of that case. The parties agree that further evidentiary proceedings are unnecessary, and that the matter may be resolved based on the briefs and the record made before the magistrate judge. My review is de novo. Fed. R. Crim. P. 59(b)(3).

## I. FACTS

On May 25, 2008, at about 9:00 p.m., Milwaukee Police Officers Matthew Kaltenbrun and Richard Hoffman conducted a traffic stop based on a noise ordinance violation. (Oct. 8, 2008 Evid. Hr'g Tr. at 4-6; 31.)[1] The officers effected the stop by activating their emergency lights and giving a short, audible signal from the squad's siren. (Tr. at 6; 32.) The driver slowed in response to the officers' signal, but it took him about a block to fully pull over. While the driver was slowing, the officers observed him lean to the left, as if withdrawing something, then lean over to the right towards the center area of the vehicle. (Tr. at 7; 32-33.) Kaltenbrun testified that based on his experience, these types of movements usually meant that the driver was reaching into a pocket or waistband and trying to conceal an object or a weapon inside the vehicle. (Tr. at 7.) Hoffman likewise testified that the movements he observed were consistent with someone trying to conceal a firearm. (Tr. at 33-34.)

After the vehicle pulled over, Kaltenbrun approached from the passenger side and Hoffman from the driver's side. The officers illuminated the interior of the vehicle with their flashlights, but did not draw their firearms. (Tr. at 9-10; 34.) Hoffman specifically used his flashlight to see the driver's hands (Tr. at 34); he did not ask for a driver's license or other identification because he did not want the driver reaching into an area he could not see (Tr. at 51).

While Hoffman engaged the driver (Tr. at 34-35), Kaltenbrun looked in the front passenger window, observing a red T-shirt partially covering a bottle of gin or vodka. (Tr. at 10.) Kaltenbrun observed that the seal on the bottle had been broken and that it was about

---

[1] Defendant does not contest the validity of the stop.

2

half full, causing him to believe the driver had an open intoxicant inside the vehicle. (Tr. at 12.) Kaltenbrun then advised Hoffman to arrest the driver, based on the noise violation and the open intoxicant.[2] (Tr. at 13; 35.)

Hoffman removed the driver – later identified as defendant Bullock (Tr. at 18; 38) – from the car and handcuffed him. (Tr. at 13-14; 36.) Hoffman checked defendant for weapons and observed a holster attached to his belt. (Tr. at 37.) As defendant was being walked back towards the officers' squad car, Kaltenbrun began a search of defendant's car.[3] Kaltenbrun first removed the T-shirt, observing that the liquor bottle contained gin, and that it had previously been opened. (Tr. at 14-15.) He also observed a blunt wrapper on the front passenger seat, which contained a marijuana cigarette. Kaltenbrun then opened the center console and observed a black firearm inside. (Tr. at 15.) Kaltenbrun testified that the slant of the firearm was facing towards the driver's seat, consistent with a right-handed person placing the firearm inside the console. (Tr. at 16.) Hoffman then returned to the car, and Kaltenbrun advised him of the discovery of the gun; Hoffman replied that defendant had a holster on him. (Tr. at 16; 37.) Kaltenbrun estimated that defendant was taken into custody within ten seconds of the stop. (Tr. at 23.)

---

[2] Hoffman testified that he believed Kaltenbrun had observed a gun, resulting in the directive to arrest. (Tr. at 46.) Hoffman further testified that regardless of what Kaltenbrun said, it was his intent, based on defendant's furtive movements, to order defendant out of the car and conduct a pat-down and search of the passenger compartment for weapons. (Tr. at 49.) However, Kaltenbrun asked him to arrest the driver before he (Hoffman) could conduct the pat-down.

[3] Hoffman testified that at the time of the vehicle search, defendant was just behind the driver's side door, facing the vehicle. (Tr. at 38.)

3

## II. DISCUSSION

As indicated above, the magistrate judge recommended denial of the motion based on Belton. In Belton, the Supreme Court held that when an officer lawfully arrests the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of the automobile and any containers therein. 453 U.S. at 460-61. The Court justified the rule based principally on officer safety concerns. However, lower courts subsequently adopted a broad construction of Belton, untethered from the officer safety concern animating the decision, approving searches after the suspect had been handcuffed and secured, or even after he had left the scene. Gant, 129 S. Ct. at 1718-19 (collecting cases). In Gant, the Court adopted a limited construction of Belton, holding that: "Police may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." 129 S. Ct. at 1723.

Defendant argues that he had no ability to access a weapon in the vehicle; he had, at the time of the search, been removed from the car and handcuffed, and was being walked to the squad. Nor, defendant contends, can the search be justified based on the need to collect evidence of the offenses of arrest; the vehicle would not reasonably contain evidence of the noise violation, and the officers had already discovered the open intoxicant. He therefore argues that the search and seizure of the gun violated his Fourth Amendment rights.

However, as the Gant Court acknowledged, a search incident to arrest is not the only method by which police may conduct a warrantless search of a suspect's car:

> Other established exceptions to the warrant requirement authorize a vehicle search under additional circumstances when safety or evidentiary concerns demand. For instance, Michigan v. Long, 463 U.S. 1032 (1983), permits an

4

officer to search a vehicle's passenger compartment when he has reasonable suspicion that an individual, whether or not the arrestee, is "dangerous" and might access the vehicle to "gain immediate control of weapons." Id., at 1049 (citing Terry v. Ohio, 392 U.S. 1, 21 (1968)). If there is probable cause to believe a vehicle contains evidence of criminal activity, United States v. Ross, 456 U.S. 798, 820-821 (1982), authorizes a search of any area of the vehicle in which the evidence might be found. . . . Ross allows searches for evidence relevant to offenses other than the offense of arrest, and the scope of the search authorized is broader. Finally, there may be still other circumstances in which safety or evidentiary interests would justify a search. Cf. Maryland v. Buie, 494 U.S. 325, 334 (1990) (holding that, incident to arrest, an officer may conduct a limited protective sweep of those areas of a house in which he reasonably suspects a dangerous person may be hiding).

> These exceptions together ensure that officers may search a vehicle when genuine safety or evidentiary concerns encountered during the arrest of a vehicle's recent occupant justify a search.

Id. at 1721.

In the present case, Officer Kaltenbrun lawfully entered defendant's vehicle to seize the gin bottle as "evidence of the offense of arrest," Gant, 129 S. Ct. at 1723, i.e., possession of an open intoxicant, and safety and evidentiary concerns supported the search of the center console area in which Kaltenbrun found the gun. Defendant failed to immediately pull over in response to the officers' signal, slowing but continuing on for about a block, during which time the officers observed him lean to the left, as if withdrawing something from his waistband or pocket, then lean to the right, as if to stash something in the center console area. Both officers concluded, based on their training and experience, that these movements were consistent with the driver trying to conceal a firearm. The officers confirmed what they had seen with each other, and Hoffman testified that if Kaltenbrun had not quickly directed defendant's arrest based on the open intoxicant, he planned to conduct a pat-down and search for weapons based on his observations. See, e.g., United States v. Fryer, 974 F.2d 813, 819 (7th Cir. 1992) (upholding vehicle search under Long where officers observed furtive movements after

5

signaling car to pull over for a traffic violation).[4]

Given these circumstances, Kaltenbrun lawfully searched the center console area for contraband, not incident to defendant's arrest, but because it was reasonable to believe that a firearm would be located there. I further note that, after examining the front seat, where he first observed the open intoxicant, Kaltenbrun focused his search on the center console area, where the officers both believed defendant may have stashed a gun. See Ross, 456 U.S. at 824 (explaining that the scope of a warrantless search of an automobile "is defined by the object of the search and the places in which there is probable cause to believe that it may be found").

In United States v. Martinez-Cortes, 566 F.3d 767 (8th Cir. 2009), the Eighth Circuit, distinguishing Gant, recently upheld a similar search. In Martinez-Cortes, police stopped the defendant as he tried to drive away from a residence subject to a search warrant. As they approached, the officers saw the defendant "looking towards the middle console and moving as if to shove something between the center console and his right leg." Id. at 769. The officers ordered the defendant out and arrested him on an outstanding warrant. The officers then searched the defendant's van, locating contraband. The court stated:

> Because Martinez-Cortes was secured outside the Excursion and then arrested for an undescribed misdemeanor warrant, the Supreme Court's recent decision in Arizona v. Gant, --- U.S. ----, 129 S. Ct. 1710, 173 L. Ed. 2d 485 (2009), severely limits the officers' authority to conduct a warrantless search of the vehicle incident to his arrest. However, the warrant to search vehicles in the curtilage of 7510 Trumble Avenue combined with the occupants' furtive actions when the Excursion was stopped gave the officers probable cause to believe that

---

[4] It is true that the reasonableness of a search depends on what actually happened, rather than what could have happened. See United States v. Garcia, 376 F.3d 648, 650 (7th Cir. 2004). However, Hoffman's testimony is relevant to assessing the safety and evidentiary concerns presented under these facts.

6

contraband or other evidence of drug crimes would be found in the stopped vehicle, which was an independent basis for conducting a warrantless search of the vehicle. See United States v. Ross, 456 U.S. 798, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982), cited with approval in Gant, at 1721.

Id. at 771 n.3. Similarly, defendant's furtive gestures, coupled with the other circumstances, gave the officers probable cause to search the center console of defendant's car for contraband.

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that defendant's motion to suppress is **DENIED**.

Dated at Milwaukee, Wisconsin, this 23rd day of June, 2009.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge